LEWIS BRISBOIS BISGAARD & SMITH LLP
KATHRYN HONECKER, SB #020849
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
E-Mail: Kathryn.Honecker@lewisbrisbois.com
Telephone: 602.385.1040
Facsimile: 602.385.1051

*Attorneys for Defendant, Truly Nolen of America, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Crystal Gannon, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> Truly Nolen of America, Inc., <br><br> Defendant. | Case No. 4:22-cv-00428-JAS <br><br> **DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** <br><br> *(The Honorable James A. Soto)* |

  Defendant Truly Nolen of America, Inc. ("Truly Nolen") moves to dismiss Plaintiff Crystal Gannon's Amended Complaint (Dkt. 12). This Motion includes factual and facial attacks under Federal Rule of Civil Procedure 12(b)(1). The FRCP 12(b)(1) factual attack requires Plaintiff to offer evidence, not just point to allegations, to demonstrate concrete injury to establish standing under Article III of the United States Constitution. If Plaintiff's claim survives the FRCP 12(b)(1) challenge, Truly Nolen moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff fails to state a claim upon which relief can be granted for any claim. This Motion is based on the following Memorandum of Points and Authorities, the Declarations of Jon Kardassakis and Mark Ringlstetter, the Court's file for this action, and such other matters as the Court may consider.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a no-injury class action filed after Truly Nolen of America, Inc. ("Truly Nolen") gave the required statutory notice of a data-security incident when it was the victim of a cyber-attack. American businesses face an onslaught of criminal attackers trying to take over their computer systems. A federal judge has noted "[t]here are only two types of companies left in the United States, according to data security experts: those that have been hacked and those that don't know they've been hacked." *Storm v Paytime, Inc.*, 90 F. Supp 3d 359, 360 (M.D. Pa. 2015). After nearly every notice of a data security incident comes a lawsuit claiming some speculative future injury could happen. Plaintiff follows this formula.[1] One problem for Plaintiff is that the mere allegation that a data-security incident occurred does not mean this Plaintiff has a viable claim in federal court. Additionally, for purposes of the FRCP 12(b)(1) factual attack on standing, it is significant that there was no information regarding this Plaintiff in the potentially affected Truly Nolen computer systems. Declaration of Mark Ringlstetter ("Ringlstetter Dec.") ¶ 7.

Courts take a rigorous look at issues of injury and standing in data-security litigation, especially after the U.S. Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ("*TransUnion*"). Courts dismiss suits where, as here, there is a lack of concrete injury. Recently, a court dismissed a similar data security case, concluding just because information *may have been* accessed does not mean it caused concrete harm. *In re Practicefirst Data Breach Litig.*, 2022 U.S. Dist. LEXIS 19272, at *27–28 (W.D.N.Y. Feb. 1, 2022) ("*Practicefirst*"). Plaintiff's Amended Complaint is devoid of allegations that Plaintiff, or any putative class members, experienced any actual fraud, misuse or any type of actual concrete harm because of this data security incident. More significantly, the

---

[1] Plaintiff brings claims for Negligence, Invasion of Privacy, Breach of Confidence, Breach of Implied Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and a claim under the Arizona Consumer Fraud Act A.R.S. Rev. Stat. § 44-1522 *et seq*.

concurrently filed Declaration of Mark Ringlstetter, Truly Nolen's Vice President of Training and Technical Services, provides evidence that "no information regarding [Plaintiff] could have been accessed during the data security incident" and no notification letter [was sent] to her. Ringlstetter Dec. ¶¶ 4–7.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiff Crystal Gannon is a citizen of Arizona. FAC ¶ 14. Plaintiff alleges she "received a letter form Defendant, dated on or about August 26, 2022, stating that his/her/their PHI/PII and/or financial information was involved in the Data Breach." FAC ¶ 20. Plaintiff does not allege unauthorized use of her information, identity theft, fraud, or economic harm. She does not allege facts of such misuse or harm for putative class members. Plaintiff does not plausibly allege expending time or money because of this incident.

## III.   LEGAL STANDARD

Truly Nolen moves to dismiss pursuant to FRCP 12(b)(1) and 12(b)(6). Standing is properly challenged through a Rule 12(b)(1) motion. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) motion challenges subject matter jurisdiction and may be facial or factual. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "A 'facial' attack accepts the truth of the plaintiffs' allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121(9th Cir. 2014). In a factual inquiry, the Court may consider materials beyond the complaint. *Savage v. Glendale High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Here, Truly Nolen makes both a facial and factual attack. **The factual attack imposes a burden on Plaintiff to offer evidence demonstrating concrete harm. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence . . . *the party opposing the motion must furnish affidavits or other evidence* necessary to satisfy its burden of establishing subject matter jurisdiction**." *Id.* (emphasis added).

Plaintiffs seeking to represent a class must allege "they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). "[A] person cannot predicate standing on injury which he

does not share. Standing cannot be acquired through the back door of a class action." *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (*citing O'Shea v. Littleton*, 414 U.S. 488, 493 (1974)).

Courts must dismiss a complaint under Rule 12(b)(6) if the alleged facts do not entitle Plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-61 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Legal conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009).

## IV. FACTUAL 12(B)(1) ATTACK: NO INFORMATION ABOUT THIS PLAINTIFF WAS EVEN POTENTIALLY INVOLVED IN THE DATA SECURITY INCIDENT

On November 11, 2022 Defense counsel wrote to Plaintiff's counsel and advised that their suit filed on behalf of Plaintiff Crystal Gannon lacked a factual basis and lacked any evidentiary support. An email to Plaintiff's counsel advised:

> Your Class Action Complaint alleges, "Representative Plaintiff(s) received a letter from Defendant, dated on or about August 26, 2022, stating that his/her/their PHI and/or financial information was involved in the Data Breach (the "Notice")." Complaint ¶ 20. The "Representative Plaintiff" is Crystal Gannon. Based on her alleged receipt of that notification letter, the Complaint alleges that Plaintiff Crystal Gannon was a "victim[] of the Data Breach." Complaint ¶ 14.
> There is no evidentiary support for those claims. Based on a review of the records regarding who notification of data security incident letters were sent to, we are advised that no letter was sent to Crystal Gannon (on or about August 26, 2022 or at any other time). Additionally, we are advised that based on a review of the records that were potentially accessed in the data security incident, there are no records that refer to or provide any information regarding Crystal Gannon. In sum, there is no evidentiary support for the averments that Crystal Gannon was a "victim[] of the Data Breach" or that she received a notification letter telling her that any information about her was even potentially involved. There is no factual basis for you or her to believe she was a "victim[] of the Data Breach."

Declaration of Jon Kardassakis ("Kardassakis Dec."), ¶ 2, Ex. 1. Plaintiff's counsel responded by providing a notification letter sent to Crystal Fraga (not Crystal Gannon) advising Crystal Fraga that her information may have been involved in this incident. *Id.* ¶ 3, Ex. 1. Defense counsel wrote back and advised:

> Crystal Gannon and Crystal Fraga are not the same person.
> As stated in my earlier email, based on a review of the records that were potentially accessed in the data security incident, there are no records that refer to or provide any information regarding your client Crystal Gannon. Crystal Gannon has no basis to make a claim.
> Your Complaint alleges, "Representative Plaintiff(s) received a letter from Defendant, dated on or about August 26, 2022, stating that his/her/their PHI and/or financial information was involved in the Data Breach (the "Notice")." Complaint ¶ 20. Your email confirms there is no evidentiary support for that allegation. Based on your email she may have received a letter stating Crystal Fraga may have had information involved in this incident. But your client Crystal Gannon client has no basis to conclude that her PHI and/or financial information was involved.

*Id.* ¶ 4, Ex. 1. Plaintiff's response was to file the Amended Complaint alleging:

> ""Gannon" is Representative Plaintiff's married name and her current legal name. Representative Plaintiff's maiden name and former legal name is "Fraga." The letter she received from Defendant informing her of the data breach was addressed to Crystal Fraga. As such, Defendant's records reflect Representative Plaintiff's maiden name and not her current legal name. Though this Complaint uses Representative Plaintiff's current legal name, it refers to the same person to whom that letter was addressed (i.e., Crystal Fraga)." (Dkt. 12, Amended Complaint, footnote 1 on page 2.)

*Id.* ¶ 5, Ex. 1. Public records searches call into serious doubt the claim that Crystal Gannon has used the name Crystal Fraga. *Id.* ¶¶ 7-15, Exs. 2-9. It is Plaintiff's burden to now offer evidence to support this. Additionally, assuming for sake of discussion that Crystal Gannon used the name Crystal Fraga, she is not the same person whose data is contained in Truly Nolen's records that were potentially the subject of this data security incident. Most notably, her year or birth and social security number are different. Declaration of Ringlstetter Dec. ¶¶ 5-7; Kardassakis Dec. ¶¶ 6-15, Exs. 2-9. In short, there is no information in Truly Nolen's potentially affected systems that relates to the person who filed this suit. Ringlstetter Dec. ¶ 7. This Plaintiff has no standing because she was not harmed by this incident.

"Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence, . . . *the party opposing the motion must furnish affidavits or other evidence* necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2 (emphasis added). Plaintiff's bare allegations are insufficient. The results of public records searches appear to eviscerate the claim that "Plaintiff's maiden name and former legal name is Fraga." FAC ¶ 1 n.1. Defense counsel

searched "Lexis Nexis Public Records for information regarding Crystal Gannon in Arizona." Kardassakis Dec. ¶ 8. This search produced results identifying "Crystal R. Gannon also known as Crystal Gannon residing on ▮▮▮▮▮▮▮▮ in Phoenix, Arizona who had an earlier interest in property on N. Almanza Ln, Litchfield, AZ," and identified no "other person in Arizona using the name Crystal Gannon." *Id.* ¶¶ 8-10, Exs. 2–4. "Public records provide her former married name (Crystal Azevedo), her year of birth and a partial social security number for her." *Id.* ¶¶ 7, 12-15, Exs. 6-9. The "search found no record indicating that Crystal Gannon has ever used the name Crystal Fraga." *Id.* ¶¶ 7-8, Ex. 2.

Deed records document the purchase of a Phoenix property by "Crystal R. Gannon (unmarried woman)" in 2017 (*Id.* ¶ 10, Exh. 4) and the transfer of a Litchfield property "from Logan Azevedo and Crystal Gannon (husband and wife) to Logan Azevedo (unmarried man)." *Id.* ¶ 11, Ex 5. The latter document provides "a Deed Type description of Intrafamily Transfer & Dissolution." *Id.* ¶ 11, Ex 5. A Comprehensive Person Search for "the Crystal Gannon associated with the property on E Helena Dr., Phoenix, Arizona has used the names Crystal Azevedo; Crystal R. Azevedo; Crystal Renee Azevedo; Crystal Gannon; Crystal R. Gannon; and Crystal Renee Gannon and has a date of birth in 1992. The records indicate that this person was previously associated with addresses in Riverside, MO and Kansas City, MO." *Id.* ¶ 13, Ex. 7. A "LexisNexis Public Records Statewide Person Search for the name Crystal Azevedo in Arizona" shows that "when Crystal Gannon used the name Crystal Azevedo she was associated with the real property in Litchfield Park, Arizona" and again provides year of birth and partial social security number. *Id.* ¶ 14, Ex. 8. A Missouri Driver License Record from the same period provides similar information. *See id.* ¶ 15, Ex. 9. The records search found no record of Crystal Gannon having ever used the name Crystal Fraga.

Mr. Ringlstetter "directed a search of the systems that were potentially accessed to search for all information related to Plaintiff Crystal Gannon." Ringlstetter Dec. ¶¶ 4–5. The search found "no records in the potentially accessed systems that refer to or provide any information relating to Crystal Gannon. No information regarding Crystal Gannon could have been accessed during the data security incident. No notification of the data security

incident was addressed to anyone named Crystal Gannon." *Id.* While a search of the potentially accessed systems did find information "regarding a person named Crystal Fraga, [] it appears it is not the same person who filed this suit. [Truly Nolen's] records include a year of birth and a social security number for Crystal Fraga. Her year of birth is not 1992. Her social security number does not match the partial social security number provided in the DECLARATION OF JON KARDASSAKIS." *Id.* ¶ 6. Nor do Truly Nolen's records indicate that Crystal Fraga lives or has lived in Arizona." *Id.* "In short, there is no information in our potentially affected systems that relates to the person who filed this suit." *Id.* ¶ 7. It is Plaintiff's burden to offer evidence, not point to allegations, to demonstrate standing.

## V. FACIAL 12(B)(1) ATTACK: PLAINTIFF LACKS ARTICLE III STANDING FOR FAILING TO PLAUSIBLY ALLEGE A CONCRETE INJURY

### A. Mere Occurrence of a Security Incident Does Not Constitute Concrete Injury

"Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021). To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Concrete" injuries must be "actual or imminent, not conjectural or hypothetical." *Id.* at 340. In *TransUnion,* 141 S. Ct. 2190, the Supreme Court <u>narrowed Article III standing requirements</u>, holding plaintiffs cannot establish injury-in-fact for standing by relying entirely on a risk of future harm. *TransUnion*, 141 S. Ct. at 2190. The Supreme Court instructed, "in a suit for damages the <u>mere risk of future harm, standing alone, cannot qualify as concrete harm</u>—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *Id.* at 2210–11. Stated simply, "[n]o concrete harm, no standing." *Id.* at 2200. In *Clapper*, the Supreme Court made clear that "allegations of possible future injury" or even an "objectively reasonable likelihood" of future injury are insufficient to confer standing. 568 U.S. at 408–09. A future injury constitutes an Article III injury-in-fact only "if the threatened injury is certainly impending." *Id.* (plaintiffs may not rely on "a highly attenuated chain or

possibilities" or "speculative chain of events" to establish standing).

*TransUnion* and *Clapper* instruct that to establish Article III standing in a suit for damages, Plaintiff must allege both a risk of future harm that is "actual and imminent" or "certainly impending" as well as a *separate, concrete harm* caused by exposure to the imminent risk and proportional to the actual likelihood of the harm occurring. Allegations of concrete harm tied to speculative or possible future injury are insufficient. Plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.

### B. Plaintiff has Not Alleged Imminent or Certainly Impending Risk of Harm.

Plaintiff's theory of injury rests on speculation. She attempts to allege injury based on "future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII and financial information compromised as a result of the Data Breach" and "continued risk to its PHI/PII and financial information, which *may* remain in Defendant's possession." FAC ¶ 114. No actual harm has happened. Plaintiff asserts she faces a "substantially increased *risk* of fraud, identity theft." FAC ¶ 24. (italics added). Courts have found "mere misappropriation of personal information" does not establish injury. *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021); *Beck v. McDonald*, 848 F.3d 262, 273-76 (4th Cir. 2017) ("mere theft" of plaintiffs data, without something more, required consideration of the "attenuated chain of possibilities" rejected by *Clapper* and was "simply 'too speculative' to constitute an injury in fact'").

Plaintiff contends she suffered "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of its PHI/PII and financial information" and "lost opportunity costs associated with effort expended." FAC ¶ 114. She fails to allege supporting facts. She alleges injury based on "compromise, publication, and/or theft" of her PII. *Id.* She provides no facts on how this injured her. She alleges "lost continuity to its healthcare," yet does not allege *her* healthcare was actually disrupted. *Id.* Plaintiff fails to allege "concrete injury" under *TransUnion*.

In the analogous case *Graham v. Universal Health Serv.*, the court refused to confer standing based on alleged increased risk of identity theft following exposure of plaintiffs' confidential information in a data security incident, because it was "purely speculative" that hackers intended to use plaintiffs' data for future criminal acts. 2021 U.S. Dist. LEXIS 93075 (E.D. Pa. May 17, 2021). The Amended Complaint does not allege facts showing a targeted attempt or intent to obtain Plaintiff's confidential information for future misuse.[2]

Numerous courts have declined to find standing based on an imminent risk of future identity theft under analogous facts where, as here, plaintiffs could not show either *her* data or that of *others* was actually misused. Plaintiff tries to "string together a lengthy chain of possibilities resulting in injury." *Clapper*, 568 U.S. at 410. The attack on Truly Nolen "by itself, does not demonstrate that [plaintiff is] at a substantial risk of future identity theft of fraud." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021).

### C. Plaintiff Cannot Demonstrate Actual or Concrete Harm

<u>Plaintiff Cannot Manufacture Injury by Inflicting Injury on Herself.</u>  Plaintiff contends she "spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring her accounts and seeking legal counsel." FAC ¶ 21. Courts find "where plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury." *McMorris*, 995 F.3d at 303. *See also Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 753 (W.D.N.Y. 2017) ("This rule from *Clapper* has been applied in the data breach context, such that courts have concluded that mitigation efforts following a data breach do not confer standing where the alleged harm is not imminent."). Plaintiff fails to allege an imminent risk of harm—there are no plausible

---

[2] *See Quintero*, 2021 U.S. Dist. LEXIS 237071 at *13 (motion to dismiss granted for lack of Article III standing where "there [were] no sufficiently pleaded allegations of a motive to seal the PII for identity theft or fraud."); *Travis*, 2021 U.S Dist. LEXIS 89129 (dismissed data security class action for lack of standing, in part because allegations of the attack did not indicate data was taken in a "manner that suggests it will be misused.").

facts of alleged data misuse.[3] She cannot manufacture a concrete injury where there is no imminent or substantial risk of harm nor "conjure standing here by inflicting injuries on herself to avoid an insubstantial, non-imminent risk of identity theft." *Tsao*, 986 F.3d at 1344.[4]

   <u>*Plaintiff Fails to Allege Concrete or Actual Injury Based on a Diminution in Value of Her Information*</u>. Plaintiff contends she "suffered actual injury in the form of damages to and diminution in the value of his PII" (FAC ¶ 22) and "the loss of the opportunity of how its PHI/PII and financial information is used." FAC ¶ 114. The Amended Complaint contains general and conclusory allegations that PHI/PII is "valuable to cyber criminals" on the "dark web." FAC ¶ 75. Plaintiff does not allege she attempted to sell her information and was forced to accept a decreased price, nor allege facts indicating her specific PII has somehow been devalued. This Circuit and others reject her theory. *See Pruchnicki*, 845 F. App'x at 615 (holding plaintiff failed to establish an injury where she "failed to adequately allege that *her* personal information actually lost value."); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (finding loss of personal information, which the plaintiffs "characterize[d] as an intangible commodity," did not support standing, "particularly since

---

[3] *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 40 (3d Cir. 2011) ("[I]n data breach cases where no misuse is alleged...there has been no injury" and any damages are "entirely speculative and dependent on the skill and intent of the hacker."); *Alleruzzo v. SuperValu, Inc.*, 870 F.3d 763, 766 (8th Cir. 2017) (allegations that "illicit websites are selling their [credit card information] to counterfeiters" were speculative); *Tsao*, 986 F.3d 1332 (11th Cir. 2021) (conclusory allegations of a continuing risk of identity theft "without specific evidence of misuse of class members' data does not establish a concrete injury."); *Legg v. Leaders Life Ins. Co.*, 21-655, 2021 U.S. Dist. LEXIS 232833 (W.D. Okla. Oct. 1, 2021) (dismissing a data breach class action where plaintiffs allegations, merely "lead to a plausible inference that at some unknown time in the future, some of the putative class members may be the victim of identity theft or fraud").

[4] *See also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (mitigation costs are insufficient to confer standing where there is no substantial risk of identity theft, plaintiffs "assertion of wasted time and effort necessarily rose or fell alone with the Court's determination of whether there was substantial risk of harm."); *Reilly*, 664 F.3d at 38 ("costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury'.").

the complaint does not suggest that the plaintiffs could sell their personal information for value").[5] Plaintiff's theory amounts to "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

<u>*Plaintiff's Vague Notification Delay Theory Fails to Allege Concrete Injury*</u>. Plaintiff alleges, "Defendant prevented Representative Plaintiff and Class members from taking meaningful, proactive steps to secure its PHI/PII" by failing "to provide timely and clear notification of the Data Breach. FAC ¶ 107. Plaintiff alleges no actual or impending injury *caused by* the alleged delay or her alleged inability to take "proactive steps." No instance of actual identity theft or improper use of Plaintiff's information is alleged. Nor does Plaintiff cite any statute "provid[ing] basis for finding an injury for Article III standing" for allegedly delayed notification. *Remijas*, 794 F.3d 688, 695 (7th Cir. 2015); *see also In re Sony Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014) (finding plaintiffs are required "to allege that the damages flowed from the delay, and not just that the damage flowed from the intrusion."). Plaintiff lacks Article III standing to bring any claim because she cannot demonstrate a substantial or certainly impending risk of future identity theft or concrete harm. She cannot *manufacture standing by incurring costs in anticipation of non-imminent harm. Practicefirst* at *27.

## VI. PLAINTIFF'S NEGLIGENCE CLAIM FAILS

A negligence claim under Arizona law requires proof of four elements: (1) duty, (2) breach, (3) causation, and (4) damages. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563

---

[5] *See also Welborn v. Internal Revenue Serv.,* 218 F. Supp. 3d 64, 78 (D.D.C. 2016) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value."); *Wallace v. Health Quest Sys.*, 2021 U.S. Dist. LEXIS 54557 at *21 (S.D.N.Y. Mar. 22, 2021) (no injury where plaintiffs provided only speculative allegations regarding the value of their private information); *Pena v. British Airways*, *PLC (UK)*, 2020 U.S. Dist. LEXIS 60361 at *3 (E.D.N.Y Mar. 30, 2020) (no injury based on alleged diminution in value where plaintiff "had not alleged that he was offered or forewent any opportunity to profit from the sale of his personal information"); *Fero*, 236 F. Supp. 3d at 735 (mere allegation that data "commands a high price on the black market" is insufficient to establish injury).

(2018). These elements are unsupported here. Plaintiff contends Truly Nolen owed a duty to "secure and safeguard their PHI/PII and financial information" using "commercially reasonable methods." FAC ¶ 92. Whether a duty exists is a question of law. Alleging a duty exists does not make it so. No Arizona court in the data security context has recognized a common-law duty to safeguard personal data and permit a negligence claim based on third-party criminal attack. Plaintiff attempts to allege a duty based on a "special relationship" between herself and Truly Nolen. Assuming for sake of analysis that she provided any information, no Arizona authority in the data security context suggests that providing personal information created a "special relationship" requiring Truly Nolen to guard against criminal attack. Plaintiff alleges the "law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access. . ." FAC ¶ 105. Plaintiff appears to rely on the FTC Act and HIPAA as the bases for this duty. As a matter of law, neither statute provides a private right of action. The federal scheme limits HIPAA enforcement actions to HHS and states' attorneys general. 42 U.S.C. §§ 1320d-5 to d-6; *Hudes v. Aetna Life Ins., Co.*, 806 F.Supp. 2d 180, 196 (D.D.C. 2011); *Adams v. Eureka Fire Prot. Dist.*, 352 F.App'x 137, 138-39 (8th Cir. 2009) ("Courts have repeatedly held" HIPAA does not create a private right of action); *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006). Plaintiff cites no authority allowing her to circumvent that bar by re-labeling this as a negligence claim. "[T]here is no private right of action under the Federal Trade Commission Act..." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 592 (9th Cir. 2012). Courts reject use of the FTCA to establish a negligence duty.[6] Plaintiff cites no authority to manufacture a FTCA private right of action through a negligence claim. *See In re SuperValu, Inc.*, 925 F.3d 955, 963-64 (8th Cir. 2019) ("Congress empowered the Commission—and the Commission alone—to enforce the

---

[6] *See Pica v. Delta Air Lines*, Inc., 2018 U.S. Dist. LEXIS 220836, at *25 (C.D. Cal. Sep. 18, 2018) (California negligence per se claim was "barred because the FTC Act creates no private right of action."); *Veridian Credit Union v. Eddie Bauer, LLC,* 295 F. Supp. 3d 1140, 1158-59 (W.D. Wash. 2017) (the FTCA did not impose a negligence duty under Washington law); *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 210 F. Supp. 3d 1022, 1041 (S.D. Ill. 2016) (rejecting that the FTCA creates an enforceable negligence duty under Illinois law).

FTCA. Implying a cause of action would be inconsistent with Congress's anticipated enforcement scheme….").

Plaintiff's attempt to rely on the FTC Act as basis for a duty to "use reasonable measures to protect PHI/PII" (FAC ¶ 112) similarly fails. Section 5 of the FTC Act prohibits "deceptive acts or practices in or affecting commerce." *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006) (*citing* FTCA § 5(a)(1), 15 U.S.C. § 45(a)). An act or practice is considered deceptive "(1) if it is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material." *Id*. Plaintiff does not allege facts to meet this test. Other courts have considered and rejected this theory. *See, e.g. Veridian*, 295 F.Supp.3d at 1158-59; *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 210 F. Supp. 3d 1022, 1041 (S.D. Ill. 2016) ("The court … will not acknowledge a duty premised on the FTC or common law.").

Plaintiff fails to provide facts establishing breach. "Alleging that a system was inadequate because a negative result occurred is conclusory, and Plaintiffs' claim that Magellan's system fell below an ill-defined standard is conclusory. The Court is permitted to disregard conclusory allegations. And so, the Court finds that Plaintiffs fail to properly allege that Magellan's data security was inadequate." *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 50 (D. Ariz. 2021). Plaintiff alleges no facts to establish how Defendant's "computer systems and data security practices" were inadequate. Plaintiff provides nothing to indicate a causal relationship between Truly Nolen's alleged breach and any cognizable injury. *Feins v. Goldwater Bank NA*, 2022 U.S. Dist. LEXIS 222406, at *11 (D. Ariz. Dec. 9, 2022) (finding causation based on plaintiff's allegations of phishing attacks on his email account and fraudulent accounts opened in his name following a data breach.).

Plaintiff's injury claims are not plausibly alleged. She has not alleged *she* suffered actual identity theft or lost continuity in healthcare. FAC ¶ 114. Her theories of diminution in value (FAC ¶ 22) and "compromise, publication, and/or theft" of their PII (FAC ¶ 114) are not cognizable damages. *Griffey*, 562 F. Supp. 3d at 46. "[L]ost time addressing the data breach, continued risk to their PII and PHI, and the danger of future harm are not cognizable

injuries for negligence claims." Griffey, 562 F. Supp. 3d at 46. None of Plaintiff's alleged injuries satisfy the damages element of a negligence claim.

### VII. PLAINTIFF'S INVASION OF PRIVACY CLAIM FAILS

There are four types of an invasion of privacy claim, but only intrusion upon seclusion appears to be at issue. *Feins*, 2022 U.S. Dist. LEXIS 222406, at *12. Plaintiff appears to assert a theory of intrusion upon seclusion (FAC ¶ 123), which in Arizona allows "against a party who '*intentionally* intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs' and that intrusion 'would be highly offensive to a reasonable person'." *Id.* (citing *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 947(Ariz. Ct. App. 1997)). "Invasion of privacy contemplates a true invasion, such as 'opening [] private or personal mail, searching [a] safe or [] wallet, examining [a] private bank account, or compelling [] by forged court order to permit an inspection of [] personal documents." *Id.* (citing Restatement (Second) of Torts § 652B cmt. b.). Plaintiff alleges her privacy was intruded upon because a cybercriminal gained access to data Truly Nolen had pertaining to her. FAC ¶ 127. She does not allege *Truly Nolen intentionally intruded* upon her information, but instead that "unauthorized and unknown third-parties" did. FAC ¶ 121. Courts find such conclusory allegations that "Defendant failed to protect" information in a data security incident (FAC ¶ 120-21) insufficient to establish an invasion of privacy by Defendant. *Feins*, 2022 U.S. Dist. LEXIS 222406, at *13-14 ("If a third-party hacked into Defendant's network to obtain Plaintiff's PII, the *hacker* plausibly engaged in an intrusion upon seclusion. But in that instance, Defendant did not intrude upon Plaintiff's private affairs by intentionally disclosing Plaintiff's PII, and an invasion of privacy claim fails."); *Purvis v. Aveanna Healthcare LLC*, 563 F. Supp. 3d 1360, 1377 (N.D. Ga. 2021) (plaintiff failed to state an invasion of privacy claim by alleging a third party carried out a data breach and the defendant "failed to take sufficient precautions to prevent this intrusion."). Nor does Plaintiff allege what specific information Truly Nolen had pertaining to her that any alleged intrusion could be deemed "highly offensive." FAC ¶ 122. "Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish

an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. July 12, 2012). Plaintiff fails to allege her information was intentionally disclosed to the public, or actually viewed by any unauthorized person.

### VIII. PLAINTIFF'S BREACH OF CONFIDENCE CLAIM FAILS

Plaintiff does not identify any basis under Arizona law for her breach of confidence claim. Truly Nolen finds no Arizona authority for such a claim in data security or similar contexts. Where courts in this Circuit have addressed breach of confidence under the laws of other states, they have found the tort "is based upon the concept of an implied obligation or contract between the parties that confidential information will not be disclosed." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1226 (9th Cir. 1997) (California law). Courts find no disclosure absent allegations that "Defendants affirmatively shared any information or performed any act that gave the hackers information." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1147 (C.D. Cal. 2021). Additionally, "[n]o breach of confidentiality takes place until an unauthorized person views the . . . information." *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546, 1557 (2014). Plaintiff's allegation that Truly Nolen "fail[ed] to prevent, detect, and avoid the Data Breach" (FAC ¶ 135) mirror those found insufficient by *Ambry* and *Sutter Health*. Plaintiff fails to allege Truly Nolen "affirmatively shared any information." *Ambry*, 567 F.Supp.3d at 1147. Plaintiff's allegation that that "her information was among the data accessed by an unauthorized third-party in the Data Breach" (FAC ¶ 15) is both unsupported by fact and insufficient to suggest her information was actually viewed by anyone.

### IX. PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM FAILS

An enforceable contract requires an offer, acceptance, consideration, and intent by the parties to be bound. *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1153 (D. Ariz. 2016). An implied contract is created if "conduct, rather than words [convey] the necessary assent and undertakings." *Barmat v. John & Jane Doe Partners A-D*, 155 Ariz. 519, 521 (1987). "Contract terms cannot be vaguely pleaded. Even at the motion to dismiss stage, courts cannot be left to 'guess' how a party failed to perform their contractual obligations." *Griffey,*

562 F.Supp.3d at 51 (citing *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017)).

Plaintiff is unable to allege anything that would resemble the traditional hallmarks of a contractual agreement. She alleges Truly Nolen "solicited and invited" her to "provide [her] PHI/PII and financial information as part of Defendant's regular business practices." FAC ¶ 143. She concludes that by providing this information, she and class members "entered into implied contracts with the Defendant by which Defendant agreed to safeguard and protect" it. *Id.* ¶ 144. Plaintiff provides no facts justifying the leap in logic from Truly Nolen accepting necessary PII when hiring employees to an agreement that its computer systems would never be breached. "The Court has no obligation to consider conclusory or nonexistent allegations." *Griffey*, 562 F. Supp. 3d at 51. Courts regularly dismiss implied contract claims in data security cases. *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 U.S. Dist. LEXIS 112101, *10-11 (W.D. Wash. Mar. 27, 2015) ("Plaintiff provides no evidence from which one could plausibly infer that defendant intended to contractually bind itself to a general standard of reasonable care or any particular cybersecurity standard or protocol… Plaintiff alleges no facts suggesting that he requested or that defendant made additional promises regarding loss prevention, and neither the circumstances nor common understanding give rise to an inference that the parties mutually intended to bind defendant to specific cybersecurity obligations."); *Krottner*, 406 F.App'x 129 at 130 (affirming dismissal of implied contract claim because allegations failed to demonstrate a meeting of the minds of any specific offer to encrypt or otherwise safeguard plaintiffs' personal data).

Plaintiff offers no facts as to consideration. She does not allege how an exchange of PII for a promise to secure it constitutes a bargained-for exchange. Plaintiff also fails to plausibly allege how the data incident caused her damages. *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96, (2013).

## X. PLAINTIFF'S IMPLIED COVENANT CLAIM FAILS

"The implied covenant of good faith and fair dealing is not a vehicle for creating contractual terms that the parties did not otherwise agree to; it protects the existing terms from subversion." *11333 Inc. v. Certain Underwriters at Lloyd's*, 261 F. Supp. 3d 1003,

1024 (D. Ariz. 2017). The implied covenant "arises by virtue of a contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, (1986). Plaintiff's claim here is based on the same factually deficient allegations as her breach of implied contract claim. FAC ¶ 151. Because she fails to plausibly allege the existence of an implied contract, this claim fails. *In re Banner Health Data Breach Litig.*, 2017 U.S. Dist. LEXIS 221534, at *18 (D. Ariz. Dec. 20, 2017) (dismissing implied covenant claim where "Plaintiffs have not adequately alleged an enforceable promise to keep information secure.").

## XI. PLAINTIFF'S CLAIM UNDER THE ARIZONA CONSUMER FRAUD ACT FAILS

The Arizona Consumer Fraud Act defines an unlawful practice as: The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. A.R.S. § 44-1522(A). "The elements of the private cause of action are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury. Damage or injury occurs when the consumer relies on the misrepresentation even though the reliance is not reasonable. . . . A private individual's relief under the Consumer Protection Act is his actual damages suffered as a result of the unlawful act or practice." *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992). This claim fails for the same reasons as discussed above. Additionally, Federal Rule of Civil Procedure 9(b) applies to this claim that "sounds in fraud" and requires "the who, what, when, where, and how" to be pled with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). Fraudulent misrepresentation requires that the plaintiff "was exposed to the particular representation claimed to be deceptive." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*, 996 F.Supp.2d 942, 989 (S.D. Cal. 2014). "This requires the plaintiff to identify the time, place, and content of the alleged fraudulent misrepresentation; the identity of the person engaged in the fraud; and the circumstances

indicating falseness…" *Id*. Plaintiff's allegations do not satisfy these requirements.

Plaintiff's claims for violations of the Arizona Consumer Fraud Act also fail because Plaintiff has not pled she incurred any actual damages. A broad statement that Plaintiff, or putative class members might incur damages at some point is not sufficient to support a claim.

## XII. CONCLUSION

For the reasons above, Plaintiff's claims should be dismissed.

Dated this 22nd Day of December, 2022.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    *s/Kathryn Honecker*
Kathryn Honecker
*Attorneys for Defendant Truly Nolen of America, Inc.*

**CERTIFICATE PER L.R. CIV 12.1(C)**

As part of an email correspondence between counsel for the parties that was exchanged between November 11, 2022 and November 29, 2022, Defendant's counsel notified Plaintiff's counsel of the issues asserted in the motion, and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

By  /s/Kathryn Honecker

# CERTIFICATE OF SERVICE

I hereby certify that on December 22nd 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Scott Edward Cole, Esq.
Laura Grace Van Note, Esq.
Cody Alexander Bolce, Esq.
Julia Deutsch, Esq.
**COLE & VAN NOTE**
555 12th Street, Suite 1725
Oakland, California 94607
Email: sec@colevannote.com
Email: lvn@colevannote.com
Email: cab@colevannote.com
Email: jkd@colevannote.com

*Attorneys for Plaintiff*

/s/  Kathryn Honecker

4884-1899-5780.10

20